IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LOG CABIN HOMES LTD., | ) | CASE NO 8:11-CV-102 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| CABELA'S MARKETING AND BRAND MANAGEMENT, | ) ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW the Plaintiff, Log Cabin Homes, Ltd., by and through its undersigned counsel, and for its Complaint against Cabela's Marketing and Brand Management, states and alleges as follows:

## I. THE PARTIES

1. Plaintiff LOG CABIN HOMES LTD. ("Log Cabin Homes") is a Delaware corporation with its principal place of business in Rocky Mount, North Carolina.

2. Defendant Cabela's Marketing and Brand Management ("Cabela's") is a Nebraska corporation with its principal place of business in Sidney, Nebraska.

## II. JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332, 1338, and 1367, as this is a civil action between citizens of different States and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4. The Court has personal jurisdiction over Cabela's because Cabela's resides in and transacts business in this judicial district.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), in that Cabela's

transacts business in this judicial district and some part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

### III.  BACKGROUND

**A.     The Parties' Licensing Agreement**

6.     Log Cabin Homes was founded in 1987 and is in the business of manufacturing, marketing, distributing, and selling log cabin homes.  Log Cabin Homes conducts the vast majority (more than 90%) of its business via its web site, www.logcabinhomes.com, on the Internet.  It is a "paperless" company to the extent practicable in that all catalogs, product specifications, and other information is available only through its Internet web site.  Log Cabin Homes has had a business relationship with Cabela's since at least 2008 when it entered into the first of three contracts with Cabela's by which Log Cabin Homes was designated "the official log home provider of Cabela's" as part of Cabela's Corporate Partnership and Licensing Program.

7.     Cabela's conducts a Corporate Partnership and Licensing Program to align Cabela's promotional efforts in promoting the outdoors and outdoor activities with reputable corporations for the purpose of improving the quality of services and experiences Cabela's offers to outdoor enthusiasts.

8.     On or about August 1, 2010, Cabela's and Log Cabin Homes entered into a Licensing Agreement whereby Log Cabin Homes was to participate in Cabela's Corporate Partnership and Licensing Program as a corporate partner.  Execution of the Licensing Agreement ensured that Log Cabin Homes could continue using the Licensed Marks through December 31, 2015.

9.     Pursuant to the Licensing Agreement, Cabela's granted Log Cabin Homes a

license to use Cabela's trademarks ("CABELA'S, the "CABELA'S Signature Logo", and other marks designated by the parties) (hereafter "the Licensed Marks") in connection with the manufacture, marketing, distribution, and sale of Log Cabin Homes' log cabin products and components thereof.

10.     The Licensing Agreement was effective beginning August 1, 2010 and shall continue until December 31, 2015.  The Licensing Agreement provides that a non-breaching party may terminate the agreement prior to December 31, 2015 "due to a material breach of any of the terms or provisions of this Agreement, provided written notice of such material breach is given to the breaching party and the breaching party fails to cure such breach within thirty (30) days of receipt of such notice in the case of monetary breach; and within sixty (60) days of receipt of such notice in the case of nonmonetary breach."

11.     Since entering into the Licensing Agreement with Cabela's, Log Cabin Homes has engaged in a massive program to carry out the parties' agreement.  Log Cabin Homes has expended millions of dollars on marketing, promotion, design, and other business activities to promote this venture.  Pursuant to Log Cabin Homes' efforts, it introduced Cabela's to The Bentley Group ("Bentley"), which is a private equity group with which Log Cabin Homes had a prior relationship.  Bentley is developing several resort properties throughout the United States and proposed to purchase several thousand log cabin homes from Log Cabin Homes provided they were the licensed product with Cabela's name.

12.     Upon being introduced to Bentley and seeing the huge quantity of business that this single customer represented, and despite the existing agreement with Log Cabin Homes, Cabela's secretly entered into negotiations directly with Bentley (without disclosing such negotiations to Log Cabin Homes) to avoid Cabela's obligations to Log Cabin Homes and to

enable Cabela's to deal directly with Bentley for log cabin homes.  A proposed license agreement was drafted and forward by Cabela's to Bentley, whereby Cabela's sought to license its trademarks to Bentley for use in connection furnishing the official log cabin home, and provided for an October 1, 2010 commencement of the parties' agreement.  Bentley did not ultimately sign the proposed license agreement.

13. However, Cabela's took other actions to attempt to terminate its Licensing Agreement with Log Cabin Homes.  On November 8, 2010, Log Cabin Homes received a letter from Cabela's attorney advising that Cabela's objected to certain uses to which Log Cabin Homes had made of Cabela's licensed trademarks.  This was the first time Log Cabin Homes had received any such objections from Cabela's, despite the fact that Log Cabin Homes had made similar uses of the licensed trademarks for several years under the parties' marketing agreements, and subsequently the Licensing Agreement.

14. Consistent with its longstanding practice under the marketing and Licensing Agreements, Log Cabin Homes sought to respond promptly and to discuss any issues raised by Cabela's.  During November and December, 2010, Log Cabin Homes sent written correspondence to Cabela's and initiated telephone communications regarding the parties' interpretations of the scope of the Licensing Agreement.  Cabela's refused to answer Log Cabin Homes' questions.  Cabela's likewise refused to meet with Log Cabin Homes to discuss how to deal with the situation.

15. On November 8, 2010, Cabela's first notified Log Cabin Homes that it disagreed as to the scope of the Licensing Agreement and stated that it believed Log Cabin Homes' use of the Cabela's licensed trademarks was in violation of the Licensing Agreement.

16. On December 30, 2010, Cabela's sent a letter to Log Cabin Homes purporting to terminate the Licensing Agreement. Unlike the reasons stated in the November 8, 2010 letter, the December 30, 2010 letter did not allege a violation of the Licensing Agreement; rather, Cabela's asserted that it considered the Licensing Agreement terminated because it believed the parties' business relationship was "beyond repair." Specifically, Cabela's stated as follows: "It has become apparent to Cabela's, and perhaps to your company as well, that our business relationship is beyond repair. For that reason, Cabela's believes that the Licensing Agreement dated August 1, 2010 between Cabela's Marketing and Brand Management and your company must be terminated. Therefore, as of close of business Eastern Standard Time, on December 31, 2010, Cabela's will consider the Licensing Agreement terminated. So that the termination will be mutual, please sign and date a copy of this letter where indicated below and return it to me by overnight delivery service." Log Cabin Homes did not agree to terminate the Licensing Agreement.

17. On or about January 19, 2011, Cabela's sent a letter to Log Cabin Homes asserting yet another new, different, and previously unstated reason for its purported termination of the Licensing Agreement. In this letter, Cabela's asserted it had terminated the Licensing Agreement due to an alleged "repudiation" of the Licensing Agreement by Log Cabin Homes.

18. At no time did Log Cabin Homes repudiate the Licensing Agreement, nor did Cabela's ever advise Log Cabin Homes, before purporting to terminate the Licensing Agreement, that Cabela's believed Log Cabin Homes had repudiated the Licensing Agreement. At no time did Cabela's agree to meet with Log Cabin Homes to discuss alleged differences or problems.

**B.     The First Lawsuit**

19.     On or about March 9, 2011, Cabela's filed a lawsuit against Log Cabin Homes in the United States District Court for the District of Nebraska. In the lawsuit, Cabela's generally alleges Log Cabin Homes infringed the Licensed Marks by continuing to use those marks in connection with the manufacture, sale, distribution, and/or marketing of its log cabin homes after December 31, 2010.

20.     In the lawsuit, Cabela's does not allege, as it had in its December 30, 2010 letter, that the Licensing Agreement was terminated due to the breakdown of the parties' business relationship. Rather, Cabela's alleges that the Licensing Agreement was terminated due to Log Cabin Homes' "repeated repudiation" of the agreement.

21.     Log Cabin Homes did not repudiate the Licensing Agreement. The Licensing Agreement remains in full force and effect.

22.     In its Complaint, Cabela's states that it seeks preliminary injunctive relief enjoining Log Cabin Homes from using the Licensed Marks and requiring Log Cabin Homes to eliminate its web site and other advertising which used the Licensed Marks. However, Cabela's did not file a Motion for Preliminary Injunction or otherwise pursue preliminary injunctive relief in this Court. Instead, Cabela's resorted to self-help by improperly causing Log Cabin Homes' entire web site to be shut down. Cabela's self-help is described more fully in Paragraphs 23 through 25 below.

**C.     Cabela's Improper "Self-Help"**

23.     On or about March 17, 2011, without notice to Log Cabin Homes, Cabela's attorney Christopher J. Fahy sent a letter to Wild West Domains, Inc., the web host for Log Cabin Homes' web site, www.logcabinhomes.com. In the letter, Cabela's alleged that Log

Cabin Homes was a "former licensee" of the Licensed Marks, that the Licensing Agreement was terminated "based on repeated repudiation of the parties' license agreement by Log Cabin Homes," and that Log Cabin Homes was infringing the Licensed Marks "throughout its web site."

24. Wild West Domains received Cabela's letter in the morning of March 17, 2011. That afternoon, without first contacting Log Cabin Homes, Wild West Domains suspended Log Cabin Homes' web hosting account and disabled Log Cabin Homes' entire web site, **including pages which make no reference to Cabela's whatsoever**. A true and correct copy of what has displayed to customers who have attempted to visit Log Cabin Homes' web site since March 17, 2011 is attached hereto as Exhibit "A." Because the vast majority (i.e., more than ninety percent) of Log Cabin Homes' sales and revenues are generated through the company's web site, **Cabela's conduct has essentially resulted in a complete shutdown of Log Cabin Homes' entire business operations**.

25. On March 18, 2011, Log Cabin Homes requested that Wild West Domains restore Log Cabin Homes' web site, but Wild West Domains refused and advised Log Cabin Homes in pertinent part as follows: "[I]n order to have the hosting account restored, you will need to contact the complaining party [Cabela's attorney] and resolve this issue with them directly. The complaining party will then need to contact us and request that we restore access to the hosted content."

26. On March 18, 2011, Log Cabin Homes sent a letter to Cabela's attorney Christopher Fahy, advising Cabela's that Wild West Domains had shut down Log Cabin Homes' entire web site, advising that the shutdown was causing irreparable harm and substantial damages to Log Cabin Homes, and demanding that Cabela's contact Wild West Domains to have

Log Cabin Homes' web site restored. Cabela's has failed and refused to contact Wild West Domains to have Log Cabin Homes' web site restored.

**D.      Damages / Irreparable Harm Caused by Cabela's "Self-Help"**

27.      Despite having prepared a lawsuit seeking preliminary injunctive relief, Cabela's essentially through self-help provided itself with the ultimate remedy it is seeking from this Court without any notice of Log Cabin Homes. Cabela's actions in contacting Wild West Domains and having Log Cabin Homes' web site disabled has essentially resulted in, and will continue to result in, substantial damages, monetary and otherwise, to Log Cabin Homes, including but not limited to the following particulars:

- **Shutdown of Log Cabin Homes' Business Operations.** More than ninety percent (90%) of Log Cabin Homes' sales originate from Log Cabin Homes' web site. Because Log Cabin Homes' web site has been disabled since March 17, 2011, Log Cabin Homes has lost, and will continue to lose, substantial sales and revenues as a result of Cabela's conduct;

- **Loss of Customers to Competitors.** Persons who would otherwise have visited Log Cabin Homes' web site and purchased a log cabin home or other products from Log Cabin Homes have visited the web sites of other log home manufacturers and have purchased log cabin homes and other products from those manufacturers;

- **Loss of Long-Time Employees.** Log Cabin Homes has twenty-four employees, many of whom have been with the company for a significant period of time, whose duty is to monitor visitors to the company's web site and interact with those visitors by "chatting" with the visitors in a chat box on the web site. More

specifically, when a visitor has browsed on the Log Cabin Homes' web site for a specified period of time, an employee of Log Cabin Homes initiates a chat session with that visitor through a chat box that pops up on Log Cabin Homes' web site. The Log Cabin Homes' employees answer questions that the customers may have, assists the customers with their purchases, and otherwise attempts to sell products to the customers. Since March 17, 2011, those twenty-four employees have not been able to perform their services because the web site is disabled as a result of Cabela's conduct. Log Cabin Homes has suffered, and continues to suffer, significant losses as a result of having to pay those twenty-four employees despite the fact they are not performing their normal services through Log Cabin Homes' web site. In addition, Log Cabin Homes cannot continue to make such wage payments if the employees are not able to perform their jobs, and thus if Log Cabin Homes' web site is not restored promptly, Log Cabin Homes will be irreparably harmed through the loss of employees;

- **Inability to Track Would-Be Visitors to Web Site.** Log Cabin Homes does not presently have any way to track the identity or number of customers who have unsuccessfully attempted to access its web site since March 17, 2011.

- **Loss of Reputation and Goodwill.** The sudden lack of Internet presence has damaged, and will continue to further damage, the reputation and goodwill associated with Log Cabin Homes, both with customers and potential customers and also with dealers, builders, and other professionals who are accustomed to doing business with, or are now seeking to do business with, Log Cabin Homes.

## FIRST CASE OF ACTION
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP

28. Log Cabin Homes incorporates by reference the allegations contained in Paragraphs 1 - 27 above as if fully set forth herein.

29. By contacting Wild West Domains and having Log Cabin Homes' entire web site disabled, and by refusing to contact Wild West Domains to have Log Cabin Homes' web site restored, Cabela's has tortiously interfered with Log Cabin Homes' business relationship with Wild West Domains.

30. Cabela's conduct was improper, unjustified, and unprivileged.

31. Log Cabin Homes has been irreparably harmed as a result of Cabela's conduct.

32. Log Cabin Homes is entitled to preliminary and permanent injunctive relief requiring Cabela's to contact Wild West Domains and request that Wild West Domains restore Log Cabin Homes' web site.

## SECOND CASE OF ACTION
## TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCIES

33. Log Cabin Homes incorporates by reference the allegations contained in Paragraphs 1 - 32 above as if fully set forth herein.

34. By contacting Wild West Domains and having Log Cabin Homes' web site disabled, and by refusing to contact Wild West Domains to have Log Cabin Homes' web site restored, Cabela's has tortiously interfered with Log Cabin Homes' business expectancies with customers who engage in business with Log Cabin Homes through Log Cabin Homes' web site.

35. Cabela's conduct was improper, unjustified, and unprivileged.

36. Log Cabin Homes has been irreparably harmed as a result of Cabela's conduct.

37. Log Cabin Homes is entitled to preliminary and permanent injunctive relief

requiring Cabela's to contact Wild West Domains and request that Wild West Domains restore Log Cabin Homes' web site.

## JURY DEMAND

38.     Log Cabin Homes respectfully requests trial by jury in Omaha, Nebraska.

## PRAYER FOR RELIEF

WHEREFORE, Log Cabin Homes respectfully prays for the following relief against Cabela's:

1.     A preliminary and permanent injunction requiring Cabela's to contact Wild West Domains to withdraw its prior notice of alleged trademark infringement, and requesting that Wild West Domains restore fully Log Cabin Homes' web site as it existed prior to March 17, 2011;

2.     A preliminary and permanent injunction requiring Cabela's to contact all third parties it has advised that the Licensing Agreement is terminated or that Log Cabin Homes is infringing Cabela's marks, and withdraw all such notifications in writing;

3.     A preliminary and permanent injunction enjoining Cabela's from contacting Wild West Domains, or any other third party, to allege infringement of the Cabela's trademarks by Log Cabin Homes or that the Licensing Agreement has been terminated;

4.     A preliminary and permanent injunction requiring Cabela's to file with the Court and serve upon Log Cabin Homes within twenty-four (24) hours after entry of an injunction, a sworn written report setting forth in detail the manner in which it has complied with such injunction order; and

5     Such other and further relief as the Court deems just and proper.

Dated this 21st day of March, 2011.

Respectfully submitted,

LOG CABIN HOMES LTD., Plaintiff

By:   /s/ Mark C. Laughlin_____
Mark C. Laughlin # 19712
Patrick S. Cooper #22399
FRASER STRYKER PC LLO
500 Energy Plaza
409 South 17th Street
Omaha, NE 68102
(402) 341-6000
mlaughlin@fraserstryker.com
pcooper@fraserstryker.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of March, 2011, I electronically filed the foregoing with the Court using the CM/ECF system, and e-mailed a copy of the document to the following:

Tom Dahlk
tom.dahlk@huschblackwell.com

Victoria Buter
vicki.buter@huschblackwell.com

Alan Barry
Allan.barry@klgates.com

Christopher Fahy
Christopher.fahy@klgates.com

  /s/ Mark C. Laughlin_____

581316.04